IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FRANK ANDREW STROINSKI, JR.                                              PLAINTIFF

v.                              CIVIL NO. 15-5249

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                           DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Frank Andrew Stroinski, Jr., brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB") benefits under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his application for DIB on September 26, 2012. (ECF No. 15, p. 235). In his application, Plaintiff alleges disability due to degenerative disc disease and other back problems. (ECF No. 15, pp. 14, 239). Plaintiff alleges an onset date of September 14, 2012. (ECF No. 15, pp. 14, 235). This application was denied initially and again upon reconsideration. (ECF No. 15, pp. 108-16, 119-30).

Thereafter, Plaintiff requested an administrative hearing on his denied applications, and this hearing request was granted. (ECF No. 15, pp. 34, 45). Plaintiff's administrative hearing was held on February 11, 2014, in Fayetteville, Arkansas (ECF No. 15, pp. 56-102). Plaintiff

1

was present and was represented by Greg Thurman. Id. Plaintiff, Plaintiff's spouse Paula Renee Stroinski, and Vocational Expert ("VE") James Spragens testified at this hearing. Id. At the time of this hearing, Plaintiff was fifty-three (53) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. 404.1563(d). (ECF No. 15, p. 59). As for his level of education, Plaintiff completed the tenth grade and does not have a GED. Id.

After this hearing, on June 11, 2014, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (ECF No. 15, pp. 11-21). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2017. (ECF No. 15, p. 16, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 14, 2012, his alleged onset date. (ECF No. 15, p. 16, Finding 2). The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, back disorder, and thyroid disorder. (ECF No. 15, p. 16, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 15, pp. 16-17, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 15, pp. 17-19, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform:

> light work as defined in 20 C.F.R. 404.1567(b) except can occasionally climb, balance, crawl, kneel, stoop, and crouch.

Id.

The ALJ then determined Plaintiff was unable to perform his Past Relevant Work ("PRW"). (ECF No. 15, p. 19, Finding 6). The VE testified at the administrative hearing

regarding this issue. (ECF No. 15, pp. 95-100). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a price marker, which has a DOT code of 209.587-034, with approximately four hundred seventy-seven thousand (477,000) jobs in the national economy, and approximately four thousand two hundred (4,200) jobs in the state of Arkansas, as a plastics molding machine tender, which has a DOT code of 556.685-022, with approximately one hundred sixty-eight thousand (168,000) jobs in the national economy, and approximately two thousand four hundred (2,400) jobs in the state of Arkansas, and as a poultry plant production worker, which has a DOT code of 525.687-074, with approximately thirty-eight thousand (38,000) jobs in the national economy and two thousand (2,000) jobs in the state of Arkansas. (ECF No. 15, p. 20, Finding 10). Because jobs exist in significant numbers in the national economy, which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from September 14, 2012, through June 11, 2014, the date of the ALJ's decision. (ECF No. 15, p. 20, Finding 11).

Thereafter, on August 1, 2014, Plaintiff requested a review by the Appeals Council (ECF. No. 15, pp. 27-37). The Appeals Council denied this request on August 19, 2015. (ECF No. 15, pp. 5-7). On October 7, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on October 15, 2015. (ECF No. 6). This case is now ready for decision.

**II.     Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. §§ 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the

national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v).

### III.     Discussion:

Plaintiff argues the following issues on appeal: 1) the Commissioner erroneously discredited the opinions of the claimant's treating doctors; 2) the Commissioner erred in evaluating the Medical-Vocational Guidelines; and 3) the Commissioner failed to use the correct hypothetical posed to the VE.

#### A.     Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The ALJ

5

considered Plaintiff's activities of daily living and remarked, "the evidence indicates [Plaintiff] maintains the ability to perform numerous tasks including attending to his personal care needs, preparing meals, performing household duties, watching TV, going outside, shopping in stores, paying bills, playing video games, driving a car, going fishing, taking care of pets, and spending time with others." (ECF No. 15, p. 17). The ALJ gave some credit to Plaintiff's allegations of pain by limiting his RFC to work at the light exertion level with some further postural limitations. The ALJ also examined the medical evidence of record, and determined Plaintiff's condition was generally stable over time and that his treatment during the relevant period had been conservative. See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). The medical evidence of record also indicates that while Plaintiff occasionally complained of fatigue and lethargy due to his thyroid disorder, Plaintiff did not complain of ongoing side effects from his medications except for on a few occasions where his medication was subsequently adjusted to relieve the side effects. Finally, the ALJ also considered Plaintiff's testimony that he worked for two to three months after his alleged onset date. (ECF No. 15, pp. 19, 71-72). Plaintiff testified that he worked twelve hours a day during that time until his back started hurting enough that he was no longer able to continue. (ECF No. 15, pp. 71-72). The ALJ determined that Plaintiff's ability to work at that time was suggestive that Plaintiff's impairments did not preclude all work. (ECF No. 15, p. 19).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that the ALJ provided good reasons for discounting Plaintiff's subjective complaints

and that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible.

### B.     ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff specifically argues that the ALJ's RFC determination was not based on substantial evidence because he improperly discounted the opinion of Dr. Ann-Marie Magre. (ECF No. 12, pp. 9-12). Dr. Magre provided Plaintiff with a letter "To whom it may concern," on February 18, 2014, in which she opined Plaintiff's work day would have to include "frequent position changes, walking, sitting, standing at will," as well as "increased number of breaks throughout the day," and that Plaintiff's medications "could affect his safety or the safety of others at any job." (ECF No. 15, p. 654). Dr. Magre provided her opinion, "[b]ased on [Plaintiff's] previous surgical history as well as medical imaging and physical exams." Id.

7

With regard to Dr. Magre's opinion, the ALJ assigned it some weight and noted that "it is mostly inconsistent with the longitudinal medical evidence of record, subjective complaints, and his activities of daily living." (ECF No. 15, p. 18). Indeed, upon examination of the medical evidence of record, none of Plaintiff's healthcare providers during the relevant period, including Dr. Magre, noted Plaintiff would have to frequently change positions throughout the day or that he needed to take frequent breaks. Plaintiff, moreover, never complained to his healthcare providers during the relevant period that he had to frequently change position, took extra breaks, or that his medication caused any alteration in his alertness, ability to drive, or affected any other area concerning safety for himself or others.

The record indicates Plaintiff visited Dr. Magre three times between the year preceding Plaintiff's alleged onset date and the date of the ALJ's decision. On February 7, 2012, Plaintiff complained of nausea due to his hypothyroidism and pain in his hand after having hit a tree or other object. (ECF No. 15, pp. 348-49, 380-81). Dr. Magre's objective physical exam revealed no abnormalities except with regard to Plaintiff's hand. Id. Plaintiff was instructed to continue his medication at that time and was prescribed Neosporin for his hand. Id. Plaintiff returned to Dr. Magre on June 18, 2013, due to back pain, thyroid issues, and allergies. (ECF No. 15, pp. 386-87). Dr. Magre's objective physical exam revealed lumbar tenderness with range of motion and moderate pain with motion in Plaintiff's lumbar spine. Id. Plaintiff was given an injection of Depo-Medrol. Id. The record indicates Plaintiff next returned to Dr. Magre on January 8, 2014, for medication refills. (ECF No. 15, pp. 643-45). The record does not show Plaintiff had any complaints and indicates Dr. Magre's objective physical exam of Plaintiff revealed no abnormalities. Id. Plaintiff was prescribed Flexeril, Synthroid, and Hydrocodone-Acetaminophen. Id.

The record contains only three recorded instances of Plaintiff having sought any treatment in 2013: a visit with Dr. Johnson Gourd on January 14, 2013, an eye exam on January 29, 2013, and the visit with Dr. Magre on June 8, 2013, discussed above. (ECF No. 351-52, 359-63, 386-87, 609-10). Dr. Gourd's objective physical exam of Plaintiff on January 14, 2013, revealed 5/5 strength and "full painless ROM in all extremities." (ECF No. 15, p. 352). Dr. Gourd noted Plaintiff's gait was stable and steady, that he ambulated at an appropriate speed, and that he had no difficulty rising from a seated position. Id. Dr. Gourd noted in is Assessment, "Full ROM, pain with movements but minimal limitations. No radiculopathy on today's exam." Id. Based on the record, it appears Plaintiff did not seek any treatment between his visits with Dr. Magre on June 18, 2013, and January 8, 2014.

Thereafter, Plaintiff obtained an MRI of his lumbar spine on February 1, 2014. (ECF No. 15, pp. 640-44). Imaging revealed degenerative disk and degenerative joint disease at the L2-4 and L5-S1 levels with mild to moderate spinal canal and foraminal stenosis at the L2-L3 and L3-L4 levels with some severe left foraminal stenosis at L3-L4. Id. Between February of 2014 and June of 2014, Plaintiff visited Terence Grewe, D.O., who typically noted Plaintiff's back was tender to palpation, but treated Plaintiff with medication adjustments and refills. (ECF No. 15, pp. 647-52, 674-81, 703-04). Plaintiff visited Richard Drake, D.O., on June 3, 2014, who noted Plaintiff had an antalgic gait, tenderness in his lumbar spine, and mildly positive straight leg raises on the right. (ECF No. 15, pp. 711-14). A thin-cut CT of Plaintiff's lumbar spine on July 14, 2014, revealed no acute osseous abnormalities, mild anterolisthesis of L4 on L5, mild posterior disc bulges at the L3-L4 and L5-S1 levels with osteophyte formation at the L5-S1 level, mild bilateral neural foraminal narrowing at the L3-L4 level, and atherosclerotic vascular disease. (ECF No. 15, pp. 656-57, 707-10).

The ALJ did not commit error by assigning Dr. Magre's opinion less than controlling, or even little, weight. As we have frequently noted, "treating physician opinions may receive limited weight if they are conclusory or inconsistent with the record." Julin v. Colvin, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ may afford a treating source's opinion "controlling weight" if that opinion "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record*.'" Wagner v. Astrue, 499 F.3d 842, 848–49 (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). "[W]hile a treating physician's opinion is generally entitled to 'substantial weight,' such an opinion does not 'automatically control' because the hearing examiner must evaluate the record as a whole." Id. at 849 (quoting Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999)). When a treating physician's opinion is in conflict with other substantial medical evidence, then the ALJ may afford less weight to that physician's opinion. Id. (citing Prosch v. Apfel, 201 F.3d 1010, 1013–14 (8th Cir. 2000)). The ALJ's cited inconsistency between Dr. Magre's opinion and other medical evidence in the record is alone sufficient to discount Dr. Magre's opinion. See Goff v. Barnhart, 421 F.3d 785, 790-91 (8th Cir. 2005) ("While the ALJ also found Dr. Prihoda's opinion to be internally inconsistent, we need not comment on that, as an appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion").

The Court notes that in determining Plaintiff's RFC, the ALJ considered the medical opinions of many treating physicians, surgeons, and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining

10

physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### C.     Medical-Vocational Guidelines Rule 201.09:

The Medical-Vocational Guidelines, or Grids, "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." McCoy v. Astrue, 648 F.3d 605, 613 (8th Cir.2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 2). The Grids come into play at step five of the analysis, where "the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience." Holley v. Massanari, 253 F.3d 1088, 1093 (8th Cir.2001). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir.1993) (internal quotation marks and citation omitted). Generally, when a claimant suffers from nonexertional limitations such as pain, the ALJ cannot rely on the Guidelines; however, the Guidelines are properly used if nonexertional limitations "do not diminish or significantly limit the claimant's [RFC] to perform the full range of Guideline-listed activities," or if the claimant's related subjective complaints are properly discredited. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006) (quoting Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005)).

11

Plaintiff's argument with regard to the Medical-Vocational Guidelines is that the ALJ should have determined Plaintiff retained only the RFC to perform work at the sedentary exertion level rather than the light exertion level. (ECF No. 12, pp. 12-13). As more thoroughly discussed above, the ALJ's RFC determination was based on substantial evidence in the record as a whole. Had the ALJ determined Plaintiff retained the RFC to perform the full range of light work, the ALJ would have been required by Rule 202.14 to find Plaintiff "not disabled." 20 C.F.R. Part 404, Subpt. P, App. 2 § 202.14. Even if, as Plaintiff urges, the ALJ would have determined Plaintiff's education level was limited or less and that he was at least literate and able to communicate in English, the ALJ would have been required by the Guidelines to find Plaintiff "not disabled." 20 C.F.R. Part 404, Subpt. P, App. 2 § 202. The ALJ, however, determined Plaintiff was incapable of performing the full range of light work and thus properly relied on the VE's testimony to determine the extent to which Plaintiff's additional limitations eroded the relevant occupational base. Accordingly, the ALJ's decision with regard to the application of the Medical-Vocational Guidelines was proper, and was based on substantial evidence in the record as a whole.

**D.     Hypothetical Questions to the Vocational Expert:**

Plaintiff's argument with regard to the hypothetical question posed to the VE is essentially a disagreement with the ALJ's RFC determination. After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments that the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him

from performing the duties of a price marker, plastics molding machine tender, or a poultry plant production worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that the Plaintiff's Complaint should be, and is hereby dismissed with prejudice.

IT IS SO ORDERED this 12th day of January, 2017.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE